WILLIAM P. ROBESON and JOHN P. B. MAXWELL v. DANIEL PITTENGER.

This court, if a proper case be disclosed, will interfere by injunction to prevent the obstruction of ancient lights.

Chancery will interfere by injunction to prevent or remove a private nuisance, where the nuisance has been erected to the prejudice or annoyance of a right which the other party had long previously enjoyed.

It must be a strong and mischievous case, of pressing necessity, or the right must have been previously established at law, to entitle the party to call to his aid the jurisdiction of this court.

Where ancient lights have existed for upwards of twenty years, undisturbed, the owner of an adjoining lot has no right to obstruct them; and particularly so, if the adjoining lot was owned by the person who built the house containing the ancient lights, at the time of building, and was subsequently sold by him.

Whether this court will interfere by injunction to prevent the nuisance, or leave the party to establish his right at law, must depend on the particular circumstances of each case.

THIS bill was for an injunction to restrain the defendant from stopping the plaintiffs' lights, by the erection of a building on an adjoining lot. On the 17th of January, 1838, the complainants gave written notice to the defendant of their intention to apply for an injunction on the 31st of January; but the bill was filed

and the injunction issued on the 25th of that month, previous to the time specified in the notice. The material facts contained in the bill, were, that the complainants were the owners of a lot in the town of Belvidere, Warren county, adjoining a lot of the defendant. The lots (marked in the town plot as lots No. 9 and No. 10) were each fifty-two feet in front on Water-street, and above one hundred feet deep. In the year 1797, one Benjamin Sexton became seized of both lots; and about the year 1801 or 1802, he erected a dwelling-house upon one of the lots, marked No. 10, where he continued to reside until the day of his death, which occurred in 1806. This house (now the property of the complainants) was built immediately on the line of the defendant's lot, marked No. 9, and had six windows, besides two cellar windows, which opened upon and received light and air from lot No. 9, and which had remained open and unobstructed from the erection of the house until the filing of the bill, a period of more than thirty years.

Benjamin Sexton having died intestate, both the lots descended to his children, who remained seized as tenants in common, until the 28th day of April, 1828, when two of the heirs joined in a conveyance of lot No. 9 to Thomas P. Sexton, who was also an heir. Upon this lot, at the time of the deed to Thomas P. Sexton, there stood a cabinet-maker's shop, forty feet back from the street, and the front of it eighteen feet from the nearest corner of the complainants' dwelling-house; which shop was afterwards converted by Sexton into a dwelling-house. Thomas P. Sexton remained the owner of lot No. 9, until the 20th day of January, 1831, when he sold and conveyed it to one Barnet Matthews; who, by deed dated the 31st day of March, 1835, conveyed it to Hugh H. Abernethy, by whom it was conveyed to the defendant on the 26th day of March, 1836.

On the 14th day of March, 1829, lot No. 10 was conveyed by all the heirs of the said Benjamin Sexton, to John Smith; by whom it was conveyed to the complainants, by deed dated the 1st day of May, 1834.

The bill further charges, that Pittenger, the defendant, who

[Robeson and Maxwell v. Pittenger.]

purchased lot No. 9 with a full knowledge of its situation, had lately commenced digging, and was then engaged in laying the foundation of a building immediately adjoining the lot No. 10 ; and that he purposed erecting a building immediately adjoining, or so close to the complainants' dwelling-house, as to impede and stop the ancient lights of at least three windows in the dwelling-house, and one cellar window under the same, and that the defendant threatened to obstruct the others also.

The defendant, without answering the bill, gave notice of a motion to dissolve the injunction, accompanied by a copy of the defendant's affidavit, intended to be used on the hearing.  The affidavit did not materially vary the case made by the bill, and disclosed no new fact, except that he was about to erect his building about three feet from the complainants' dwelling, and not immediately adjoining it.

The case was submitted to the chancellor on the motion to dissolve the injunction, upon the written briefs of counsel.

*I. H. Williamson*, in support of the motion.

1. The general principle is unquestionable, that every man has a right to build upon his own land, though he thereby stops the lights of others house.   1 *Ventris*, 239, *Cox* v. *Matthews ;* 1 *Lev.* 122 ; 3 *Bl. Com.* 217 ; 10 *Eng. C. L. R.* 102, Littledale, J.

2. Although twenty years' *adverse* enjoyment of lights is *presumptive* evidence of a *grant,* yet there can be no such presumption from length of time, unless the lights have been enjoyed *adversely* to the rights of others ; and as there can be no *adverse* enjoyment whilst the title to the house and to the contiguous ground continues vested in the same person, no *grant* in such a case can be *presumed.*   2 *Saund. Rep.* 1756 ; 11 *East.* 373 ; 2 *Swanston*, 340–1 ; 6 *Eng. Com. Law Rep.* 523, *Barker* v. *Richardson ;* 10 *Eng. Com. Law Rep.* 102, Littledale, J.

3. If a man builds a house, and afterwards sells it, neither the vendor, nor any person claiming under him, can build on the adjacent land so as to stop the lights of the first house,

[Robeson and Maxwell v. Pittenger.]

for that would be to derogate from his own grant. 1 *Lev.* 122 ; 6 *Modern,* 116 ; *T. Raym.* 87.

4. In the present case, the obstruction and injury do not appear by the bill to be of such a character as to warrant the interference of this court by injunction ; and especially *before a trial at law,* and *before answer.* 1 *Dickens,* 164–5, *Fishmongers Comp.* &c. ; 16 *Vesey,* 338, *Atty. Gen.* v. *Nicholl ;* 2 *Swanston,* 233 to 237 ; *Eden on Injunctions,* 234 ; 12 *Eng. Com. Law Rep.* 218 ; 1 *Chitty's Gen. Prac.* 727–8.

5. And the court will not, even in a plain case of nuisance, grant an injunction *without notice,* unless the danger is pressing, and will not admit of delay. 2 *Vesey, sen.* 453. In this case, the complainants gave notice of an intended application for the injunction, but before that day obtained the injunction on an *ex parte* application.

6. The affidavit of the defendant is competent evidence. If the argument had come on upon the notice which was given, it appears from all the books that it is the constant practice to receive affidavits on the part of the defendant on answer, to show on what the injunction was obtained ; and if it would have been received then, I can perceive no reason why it should not be received now, as no answer has been filed ; and why the parties are not to be considered as standing before the court precisely in the same situation as if they were now before the court on the application for the injunction.

*H. W. Green,* contra.

1. The bill discloses a clear case of nuisance. First, Stopping *ancient* lights, is an actionable nuisance. 3 *B. C.* 216 ; 9 *Co.* 57–8 ; *Com. Dig.* "*Action on the Case for Nuisance,*" A.

Second, When the owner of an entire lot builds two or more houses upon it, and afterwards separates the ownership or occupation, each party taking a part is bound not to affect the existing state of things ; and in that case, six years' enjoyment, or less, will give as perfect a right to the free use of a *modern* window, as twenty years' adverse enjoyment would create. 1 *Ven-*

[Robeson and Maxwell v. Pittenger.]

*tris*, 237; 1 *Sid.* 167, 227; *Raym.* 87; 1 *Lev.* 122; 6 *Mod. Cases*, 116; 1 *Keble*, 553; 1 *Chitty's Prac.* 207; *Com. Dig. Action on the Case for Nuisance, A.*; 1 *Price*, 27; 21 *Eng. Com. Law Rep.* 373; 22 *Ibid*, 328, 340; 2 *Saund.* 114, *n.*; 1 *Saund. Pl. and E.* 81–2; 2 *Dane's Abridg.* 716, sec. 17; 12 *Mass. Rep.* 157, 160.

2. The proper and appropriate remedy is by injunction. 1 *Chitty's Prac.* 208, 383, 727, *and note n.*; 2 *Russell*, 121; 16 *Vesey*, 338.

3. No notice of application for the injunction was necessary. The practice is otherwise. 2 *Russell*, 121; 16 *Vesey*, 338; 4 *John. Ch.* 55.

4. Admitting notice to be necessary, the application for an injunction is addressed to the sound discretion of the court, and if allowed in a proper case, it ought not to be dissolved, merely because it was granted without notice.

5. The affidavit of the defendant cannot be read. The rule is, that the defendant's affidavit cannot be read, unless the party was entitled to notice.

THE CHANCELLOR. The object of this bill is to restrain the defendant from obstructing the light and air of a building belonging to the complainants. When the bill was presented, I granted the injunction with much reluctance, *without notice*; and I did so from the pressing character of the case, as the defendant was actually at work in erecting the very obstruction complained of. I am now furnished with the briefs of the counsel of the respective parties, on a motion to dissolve the injunction upon the case made by the bill, and shall consider the same without prejudice, as if the propriety of the interference of the court was now for the first time considered. I am not aware that this question has ever been decided in New-Jersey, and it has caused me some anxiety to determine, not so much what views have been taken by other judges and in other countries, of the question, but what should be the course of decision in this state, and particularly in a country under a rapidly increasing state of improve-

ment. It would seem unreasonable, that in those places where land is cheap, and the country thinly settled, a party, after being permitted to build his house and place his windows on the side adjoining the open field of another man, and especially after so long a possession as to presume a grant for that purpose, should have them obstructed by the erection of a wall or another building, when perhaps a little accommodation, by placing the new building a few feet further off, might work no injury to any body; and yet in populous cities, where land is very valuable, and it is the constant practice to place buildings side by side, the enforcement of the same rule might work great inconvenience and injustice. The difficulty, therefore, is to lay down one rule for all cases. Nor will it do to leave all parties to their remedy at law. That would be shutting up the doors of a court of equity, when the exercise of its legitimate powers is most needed. Cases might arise where damages would be no adequate compensation for the injury sustained, and the party unable to respond in damages at all.

The cases in the English courts are numerous, in which damages at law have been recovered for obstructing lights, and where injunctions have been issued to prevent such obstructions. The law is there well settled, and of long standing. In 1 *Levinz' Rep.* 122, the case of *Palmer* v. *Fletcher*, there is an early and important decision on this subject. This was a case at law. A man built a house on his own lands, and then sold the house to one man, and the land adjoining to another, who obstructed the windows of the house by piles of timber. This house had been recently built, yet the action was sustained. The judges differed as to what would have been the result had the man sold the vacant lot first, seeing the building had been recently erected; but all agreed, that if a stranger had owned the adjoining lands, he might obstruct the lights of a newly erected building, but not of an ancient building so that he has gained a right in the lights by prescription.

In 1 *Comyn's Digest,* title, *"Action on the Case for a Nuisance,"* A., the cases are cited in which actions on the case for a

nuisance have been allowed. If a man erect a house or mill to the nuisance of another, every occupier afterwards is subject to an action for the nuisance.

In the case of *Rosewell* v. *Pryor*, 6 *Modern*, 116, the question was, whether in a declaration for stopping the plaintiff's lights, it was necessary to state the lights and the messuage as being *ancient*, and it was held not to be necessary. In that case, Holt, chief justice, says : " If a man have a vacant piece of ground, and build thereupon, and that house has very good lights, and he lets this house to another, and after he builds upon a contiguous piece of ground, or lets the ground contiguous to another, who builds thereupon to the nuisance of the lights of the first house, the lessee of the first house shall have an action upon the case against such builder, for the first house was granted to him with all the easements and the lights then belonging to it."

This general principle is also stated in 3 *Bl. Com.* 217, where it is declared to be essential to the maintenance of the action, that the windows be *ancient*. The English cases are uniform on this subject; and chancellor Kent, in 3 *Kent's Com.* 445, declares in general terms, that " according to the English law, the owner of a house will be restrained by injunction, and he will be liable to an action on the case, if he makes any erections or improvements, so as to obstruct the ancient lights of an adjoining house."

In our own country, too, the same doctrines have been maintained; and I do not perceive that chancellor Kent, in his Commentaries above referred to, denies any where that the same rules of law on this subject apply in this country, except in a note, where he declares, that this common law prescription does not reasonably or equitably apply to buildings on narrow lots in the rapidly growing cities in this country, and upon the ground, that such was not the presumed intention of the owners of such lots. From all he says, I infer that he recognizes the general principles before stated as in force in this country, but exempts the case of city lots, from the necessity and reason of the thing, as necessary for their advancement and continued improvement.

[Robeson and Maxwell v. Pittenger.]

The case of *Story* v. *Odin*, in 12 *Mass.* 157, is a very clear and plain decision in our own courts. The property was situated in the town of Boston. The building was purchased of the town in 1795, and stood adjoining other lands of the town, with lights looking out directly upon this vacant land. In 1812, the town sold this vacant lot, and the purchaser built directly adjoining the plaintiff's building, and obstructed his lights. The court decided, that as the purchaser of the first building bought without reserving to the grantors any right to build on the adjoining ground so as to interfere with his lights, they could not, nor could their grantees, build so as to interfere with this right.

As to the proper cases for the interference of this court to prevent private nuisance, the true rule, as it appears to me, is laid down in the case of *Van Bergen* v. *Van Bergen*, in 3 *John. Ch. Rep.* 287. The chancellor says : " The cases in which chancery has interfered by injunction to prevent or remove a private nuisance, are those in which the nuisance has been erected to the prejudice or annoyance of a right which the other party had *long previously enjoyed*. It must be a strong and mischievous case of pressing necessity, or the right must have been previously established at law, to entitle the party to call to his aid the jurisdiction of this court."

From a careful examination of the cases, and the principles on which they are decided, I have come to the conclusion, that the same rules which have been established in the English courts, and in other states of the union, upon this subject, apply with the same force to us, and that there is nothing in our condition which can prevent their wholesome application : that, as a general rule, in a case of ancient lights, where they have existed for upwards of twenty years undisturbed, the owner of the adjoining lot has no right to obstruct those lights, and particularly so, if the adjoining lot was owned by the man who built the house at the time, and subsequently sold by him : and that, whether this court will interfere by injunction, or leave the party to establish his right at law, must depend on the particular circumstances of each case.

It remains to be considered, what is the case of the present complainants, and whether the injunction should be continued or not.

The property is situated in Belvidere, in the county of Warren, in this state, and was owned in fee, and possessed (as well the lot on which the house is built, as the adjoining one on which the obstruction is about to be erected) as far back as the year 1797, by one Benjamin Sexton. The premises consisted of two lots, numbered 9 and 10, and adjoined each other. Sexton owning both these lots, which were each fifty-two feet in front and rising one hundred feet deep, in the year 1801 or 1802 erected the house in question, on lot No. 10, for his own residence, and placed the same on the line between said lots Nos. 9 and 10, and built on the end towards lot No. 9, six windows besides two in the cellar. These windows have continued, *unmolested*, to receive light and air from across this lot No. 9, until the recent attempt of the defendant to build his wall for a new house directly against the same. Benjamin Sexton died intestate, in the year 1806; and his heirs at law sold lot No. 10, with the aforesaid house, on the 14th of March, 1829, to one Smith, who afterwards sold the same to the complainants. The lot No. 9, was conveyed by two of the heirs of Benjamin Sexton to a third heir, on the 28th of April, 1828; and that heir again conveyed the same, on the 20th of January, 1831, to one Matthews; which lot has since been conveyed to, and is now the property of, the defendant. On lot No. 9 there was also a building, standing back from the street about forty feet, and the front about eighteen feet from the nearest corner of the dwelling-house on lot No. 10.

Under these circumstances the defendant has commenced building the foundation of a house or shop, directly adjoining the house on lot No. 10, and so as to shut up the windows of that house. He is injoined by this court from so doing, and the question is, whether that injunction should be dissolved.

I am very clear the injunction ought not to be dissolved, and that upon all the authorities cited. The case is a very strong one. The builder of this house owned *both* lots at the time of

10

[Robeson and Maxwell v. Pittenger.]

erecting the building. The lights are *ancient*, having continued unmolested for thirty-five years. Lot No. 10, on which the house stands, passed out of the hands of the heirs at law of the original owner *first ;* and there is no pressing necessity for this interference with the established rights of the complainants.

I am, therefore, of opinion, that the injunction was rightly issued in this case, and ought not to be disturbed.

Motion denied.